UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-0237-CVE |
| | ) | |
| CHRIS BIRMINGHAM, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Chris Birmingham's Motion to Suppress (Dkt. # 28). Defendant Chris Birmingham argues that he was detained and patted down in violation of his Fourth Amendment rights, and he asks the Court to suppress evidence seized from his person on October 20, 2013. Dkt. # 28. The government responds that police had a reasonable suspicion to believe that defendant had committed a violation of a municipal ordinance and that he was possibly armed, and the investigatory detention and pat-down of defendant was permissible under the Fourth Amendment. The Court held a suppression hearing on February 12, 2014, and the government offered the testimony of Tulsa Police Department (TPD) Officer Brad Blackwell, and both parties offered exhibits.

**I.**

At approximately 11:45 p.m. on October 20, 2013, Blackwell was on patrol near 200 West Queen Street in Tulsa, Oklahoma, and he was driving west on Queen Street. While on patrol, his job duties include responding to 911 calls, making traffic stops, and making contact with citizens he encounters while on patrol. He observed something moving in the middle of Queen Street, and he was initially unsure what he had seen. He turned on his spotlight and he saw that a person was

walking in the middle of the road. The person was wearing dark clothing and the street was not well lit, and Blackwell had a hard time seeing the person walking in the road. Blackwell later identified the person as Birmingham. Blackwell noticed that there was a sidewalk available for pedestrians to use on the south side of Queen Street. On the north side of the street, there was a city park that had some lights, but Blackwell testified that not all of the park lights were on at the time he encountered Birmingham. Blackwell observed Birmingham for about approximately 20 seconds before making contact with Birmingham, and he testified that Birmingham was continuously in the middle of the road and there was no indication that Birmingham was attempting to cross the road to get to the sidewalk. Under City of Tulsa Municipal Ordinance Title 37, Chapter 11, Section 1104, "[w]here sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon any adjacent roadway." Dkt. # 29-1, at 2.

Blackwell stopped his car and pointed the spotlight at Birmingham. Birmingham immediately put his hands into the air and stated that he did not have weapons or drugs. Blackwell found this to be unusual, because Blackwell had not yet spoken to Birmingham. Blackwell asked Birmingham to put his hands down and to relax, but Birmingham took a few steps back from Blackwell. Birmingham also turned his body as if to shield his right side from Blackwell's view, and this suggested to Blackwell that Birmingham was trying to conceal something. Blackwell noticed that Birmingham was wearing dark, bulky clothing, and it was possible that a weapon could be concealed under the clothing. Blackwell told Birmingham to face him but Birmingham refused to look at Blackwell. Blackwell asked Birmingham some routine questions about where he lived and where he was going, but Birmingham stuttered and could not give a clear response. Blackwell again asked Birmingham to turn around and face him, but Birmingham refused to comply.

2

Blackwell was by himself at the time of the encounter and he did not have a backup officer present. Blackwell also testified that the particular area where the encounter occurred was a particularly dangerous area, and that night police had received reports of approximately seven to ten shots fired near Blackwell's location. Blackwell also testified that police received many calls each night from the area, and that the gang unit was active in the area.

Blackwell acknowledged that it is not unusual for an ordinary person to be somewhat nervous around police, but he formed a belief that Birmingham was planning to flee or that he could be concealing a weapon. Blackwell placed Birmingham's hands behind his back and conducted a pat-down of Birmingham. Blackwell noticed that Birmingham kept trying to bend over at the waist as if he was attempting to conceal something. Blackwell thought that he felt something near Birmingham's waistband, and he raised the front of Birmingham's hoodie. Blackwell saw the stock of a black handgun concealed in Birmingham's waistband. Blackwell handcuffed Birmingham and held Birmingham's hands until a backup officer arrived. TPD Officer Smith arrived and Blackwell advised Smith that Birmingham had a firearm. The firearm had fallen to the bottom of Birmingham's right pants leg while Blackwell was waiting for backup to arrive. Blackwell retrieved the firearm and inspected it. The firearm was not chamber loaded, but it contained a magazine loaded with eight rounds of ammunition. Smith took possession of the firearm and secured it in his patrol car.

After the firearm had been retrieved, Birmingham "randomly stated" that he had purchased the gun from a person known as "Kenneth." Dkt. # 28-1, at 2. He claimed that he needed the

firearm for protection, because his son had recently been killed and he lived in a dangerous area.[1] Id. Blackwell ran a check for outstanding warrants, and he found that Birmingham had six outstanding felony warrants in Osage County and four outstanding misdemeanor warrants in Tulsa County. Birmingham was arrested based on the outstanding warrants and for possession of a firearm after former felony conviction, but he did not receive a citation for violation of a municipal ordinance.

## II.

Defendant argues that he was illegally detained without a warrant, and any evidence seized from his person should be suppressed. The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported by probable cause. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is

---

[1] Defendant's motion to suppress does not seek the suppression of statements made to Blackwell following seizure of the firearm, and this issue was not raised at the suppression hearing.

4

engaged in criminal activity. Novitsky, 491 F.3d at 1253. The investigative detention must be "justified at its inception and reasonably limited in scope." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). The Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)).

Defendant argues that he should be considered as seized or detained from the moment Blackwell made contact with him, and he seems to be arguing that the pat-down search a separate Fourth Amendment incident that required additional evidence to support a finding of reasonable suspicion. However, it does not appear that Blackwell took any action to detain defendant at the beginning of the encounter. "A person is seized for Fourth Amendment purposes when, considering all of the circumstances, the police conduct 'would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'" United States v. Rodriguez, 739 F.3d 481, 486 (10th Cir. 2013). In this case, the encounter began when Blackwell turned a spotlight on defendant and defendant immediately held his hands in the air. There is no indication that Blackwell issued any commands to defendant or took any action to restrain defendant's freedom at the beginning of the encounter. Instead, defendant held his hands in the air and voluntarily stated that he did not have any drugs or weapons. Blackwell asked defendant to relax and put his hands down, and he did not immediately issue any commands to

defendant. A person's subjective belief that he has been seized is irrelevant, and the Court must consider whether a person has an objective reason to believe that he is not free to end an encounter with police. United States v. Villegas, 554 F.3d 894, 899 (10th Cir. 2009). There are no cases supporting the proposition that a reasonable person would believe that he is in custody based only a police officer's use of a spotlight at night on a poorly lit street. Based on Blackwell's testimony, it is unclear if his initial encounter with defendant rose to the level of an investigative detention, because he took no steps to issue a citation to defendant or to detain defendant.

However, even if the encounter should be treated as an investigative detention from its inception, Blackwell testified that he observed a violation of municipal law and made contact with defendant after the violation occurred, and the government argues that Blackwell had reasonable suspicion to initiate an investigative detention. Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Alcaraz-Arellano, 441 F.3d 1252, 1260 (10th Cir. 2006) (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002). An officer who has reasonable suspicion of a violation of law "need not 'rule out the possibility of innocent conduct' as long as the

totality of the circumstances suffices to form a 'particularized and objective basis'" to initiate a stop. United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (quoting Arvizu, 534 U.S. at 277-78 (2002)).

The Court finds that Blackwell had reasonable suspicion to believe that defendant had committed a violation of a municipal ordinance. Blackwell observed something moving in the road and he used his spotlight to confirm that it was a person walking in the middle of the road. Blackwell saw no indication that the person was attempting to cross the street to reach the sidewalk on the south side of Queen Street. It is a violation of City of Tulsa Municipal Ordinance Title 37, Chapter 11, Section 1104 to walk in the road when there is a sidewalk available for pedestrian use. Defendant could be arguing that it was impossible to comply with the law under the circumstances. He cites City of Tulsa Municipal Ordinance Title 26, Chapter 1, Section 104, which states that no person may enter a city park between the hours of 11:00 p.m. and 5:00 a.m., and he claims that he could not have walked in the park on the north side of Queen Street without violating the law. In addition, defense counsel's questioning suggests that defendant intends to argue that Blackwell could have seen defendant walking across the street in an attempt to reach the sidewalk on the south side of Queen Street. However, Blackwell testified that defendant was walking in the middle of the road and he was not attempting to cross the street, and the Court finds that his testimony is credible. The Court also notes that defendant's arguments could be a defense at trial if he were actually prosecuted for a violation of the municipal ordinance, but his arguments do not detract from Blackwell's reasonable suspicion that defendant had committed such a violation. See Vercher, 358 F.3d at 1261.

During an investigative detention, a police officer is authorized to take reasonable steps to ensure officer safety. United States v. Garcia, 459 F.3d 1059, 1063 (10th Cir. 2006). In some cases, police are authorized to conduct a pat-down of a person "to allow the officer to pursue his investigation without fear of violence." Id.  Under Terry, an officer possesses:

> a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

Terry, 392 U.S. at 27.  Under the totality of the circumstances, a reasonable police officer can take into account whether the investigative detention is taking place a dangerous neighborhood or location. United States v. Atlas, 94 F.3d 447, 450-51 (8th Cir. 1996).

Defendant argues that the objective evidence available to Blackwell did not give rise to a reasonable suspicion that defendant was armed, and the pat-down of defendant's person was a violation of his Fourth Amendment rights. However, several objective factors were present that raised Blackwell's suspicions that defendant was armed and that there was a need to conduct a pat-down for officer safety. As soon as Blackwell made contact with defendant, defendant held his hands in the air and voluntarily stated that he did not have weapons or drugs. Blackwell noted that this was "very uncommon" behavior, and the Court finds that defendant's behavior objectively supported Blackwell's belief that defendant was unusually nervous or that he was hiding a weapon on his person. Defendant acted evasively by taking steps away from Blackwell and by turning his body to conceal his right side. Defendant also failed to comply with Blackwell's request to face Blackwell during the encounter. This behavior suggested that defendant was attempting to hide

8

something from Blackwell and, based on defendant's unsolicited statement about weapons or drugs, that defendant could be attempting to conceal a weapon on his person. Blackwell could also have taken his surroundings into account. These circumstances include that defendant was walking on a poorly lit road near midnight and he was wearing dark clothing at night, and this could objectively support a belief that a person did not want to be observed. Defendant was wearing bulky clothing that could easily conceal a firearm from view. Defendant's suspicious conduct should also be considered in light of the need for officer safety, especially considering that Blackwell did not have a backup officer present before he conducted the pat-down. Blackwell also testified that the neighborhood was known to be dangerous and that there were reports of shots fired near the location of the encounter. A reasonable police officer working alone who encounters a person in dark clothing on a poorly lit street in a dangerous neighborhood could objectively have a concern for officer safety, and this concern would be heightened when a person engages in suspicious behavior tending to indicate that the person is attempting to conceal something from the police officer's view. Considering the totality of the circumstances, Blackwell had an objectively reasonable basis to suspect that defendant could be armed and dangerous, and the pat-down of defendant's person was not a violation of his Fourth Amendment rights.

The government argues that defendant's motion should be denied even if the Court were to find a constitutional violation, because the evidence would have been discovered if Blackwell had continued with the process of writing a citation for a violation of municipal law. "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation would have discovered it." United States v. Martinez, 512 F.3d 1268, 1273-74 (10th Cir. 2008). To avail itself of the inevitable discovery rule,

9

the government must show by a preponderance of the evidence that the evidence would have been discovered without a Fourth Amendment violation. Id. If Blackwell had not become suspicious that defendant was armed, he testified that he would have proceeded to write a citation for the violation of municipal law, and he would have waited for backup to arrive before writing the citation. After backup arrived, Blackwell would have asked defendant for identification and would have run a records check to determine if defendant had outstanding warrants. Once it was determined that defendant had outstanding warrants, Blackwell would have conducted a pat-down of defendant before transporting him to jail, and the firearm would have been found on defendant's person. The Court finds that Blackwell's testimony on the inevitable discovery of the firearm is credible, and the government has shown by a preponderance of the evidence that the firearm would have been discovered by Blackwell even if defendant could have established that the pat-down was conducted in violation of his constitutional rights.

**IT IS THEREFORE ORDERED** that Defendant Chris Birmingham's Motion to Suppress (Dkt. # 28) is **denied**.

**DATED** this 12th day of February, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE